

March 17, 2020

Christopher S. Finnerty
chris.finnerty@klgates.com

T +1 617 261 3123
F +1 617 261 3175

**By ECF**

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Eminah Properties LLC, et al. v. Energizer Holdings, Inc., et al,* No. 1:20-148-AMD-CLP: Defendants' Request for Pre-Motion Conference

Dear Judge Donnelly:

In accordance with your Honor's Individual Practices and Rules, Defendants Energizer Holdings, Inc. and Energizer Brands, LLC (together, "Energizer") request a pre-motion conference on their anticipated Partial Motion to Dismiss Counts I-III and VI-X of the Complaint filed by Plaintiffs Eminah Properties LLC and My Battery Supplier LLC (together, "Plaintiffs" or "Eminah"). Grounds for Defendants' anticipated Partial Motion to Dismiss are summarily set forth herein.

### I. Counts I-III: Plaintiffs' Contract Based Claims Fail At the Pleadings Stage.

Counts I-III of the Complaint allege claims for breach of contract (Count I), unjust enrichment (Count II), and fraudulent inducement (Count III) on the basis of Plaintiffs' allegation that the parties "agreed" (1) that "Eminah would become a distributor" of Energizer products (ECF No.1, ¶ 31) ("Compl."); and (2) that Eminah would purchase, and Energizer would deliver, Rayovac overstock batteries (*Id.* ¶¶ 42-43). These claims fail at the pleading stage.

As a threshold matter, there is no written agreement alleged in the Complaint and that alone defeats Plaintiffs' claim for breach of contract (Count I) under the statute of frauds. Under New York law, because the agreement alleged in the Complaint is one for the sale of goods exceeding $500 and for the creation of a distributorship relationship, it must be reduced to writing. *See* N.Y. U.C.C. § 2-201(1); *see also Computech Intern., Inc. v. Compaq Computer Corp.*, No. 02-cv-2628, 2002 WL 31398933, at *3 (S.D.N.Y. Oct. 24, 2002) (citing various supporting cases and holding that distributorship agreements fall under UCC § 2-201 and must comply with the statute of frauds). New York law also provides that contracts of an indefinite duration — like the one alleged in the Complaint — are "deemed incapable of being performed within one year" and thus also fail under the statute of frauds pursuant to N.Y. Gen. Oblig. Law § 5-701(a)(1). *See Computech Intern., Inc.*, 2002 WL 31398933 at *3. Absent allegations of a writing memorializing the purported sale and distributorship agreement in question, Plaintiffs' breach of contract claim fails.

Plaintiffs' breach of contract claim is also subject to dismissal for lack of alleged material terms. Eminah alleges only that it emailed Energizer stating its desire to have "full product access," the "most competitive pricing," and the ability to sell products in Eminah's existing sales channels (Compl. ¶ 32),

and that "[t]he same day, Garcia **acknowledged** Eminah's offer and stated that Brad Sellenriek . . . '**will start the process** to get you set up' as a distributor." *Id.* ¶ 33 (emphasis supplied). This does not plausibly establish a meeting of the minds as to the terms of a distributorship agreement between Energizer and Eminah, and it certainly does not plead the material terms that are required to sustain a breach claim at the pleading stage. As the District Court for the Southern District of New York held when dismissing a breach claim turning on similar facts, "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *See Computech*, 2002 WL 31398933, at *2. If anything, Plaintiffs have alleged an "agreement to agree," something that is not enforceable under New York law. *Id.*

Plaintiffs' unjust enrichment claim (Count II) fairs no better. Nowhere does Eminah allege that it conferred a benefit on Energizer that it would be unjust for Energizer to retain. *See Vertex Constr. Corp. v. TFJ Fitness LLC*, No. 10-cv-683, 2011 WL 5884209, at *3 (E.D.N.Y. Nov. 23, 2011) (dismissing unjust enrichment claim lacking allegations of benefit conferred). In fact, all that is alleged is that Eminah paid $230,000 for batteries <u>that it received</u>. Compl. ¶¶ 38, 43. With respect to the allegation that Energizer had promised to sell Eminah more batteries but didn't, that would not sustain an unjust enrichment claim where Eminah did not confer any benefit on Energizer with respect to those batteries (Eminah does not allege that it paid for those additional batteries). *See id.* ¶¶ 42-49.

Finally, the Complaint does not state a plausible claim for fraudulent inducement (Count III), which requires a plaintiff to plead, with the particularly required under Rule 9(b), the following: (i) a material misrepresentation of fact, (ii) an intent to deceive (i.e., scienter), (iii) reasonable reliance on the misrepresentation, and (iv) damages. *See Goonewardena v. Forster & Garbus LLP*, No. 18-cv-29, 2019 WL 121677, at *6-7 (E.D.N.Y. Jan. 7, 2019). The Second Circuit has underscored that while the scienter element necessary to allege fraudulent intent may be demonstrated by inference, doing so requires that the plaintiff allege "facts to show that defendant had both motive and opportunity to commit fraud," or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at *7 (internal citations and quotation marks omitted). Far from meeting that bar, Eminah simply alleges in conclusory fashion that "Defendants knowingly and fraudulently induced Plaintiffs to enter into an agreement for the sale of [a] large quantity of overstock rechargeable batteries." Compl. ¶ 2. But as Eminah admits, "Eminah enjoyed a close business relationship with [Rayovac]" dating back to 2008, and "[o]ver the years, Eminah purchased hundreds of thousands of dollars of Rayovac Batteries . . . **often assist[ing] [Rayovac] in disposing of large quantities of closeout and overstock Rayovac Batteries.**" *Id.* ¶ 25 (emphasis supplied). When Energizer bought Rayovac in 2019, the parties simply continued their pre-existing business relationship. *See id.* ¶ 26 (noting that "Eminah's contacts at [Rayovac] became employees of Energizer" when it was acquired). Based on Eminah's own allegations of the parties' already established purchase relationship, it is not plausible that Eminah was "induced" into buying Rayovac batteries, something it had been doing regularly for over a decade. There are no allegations of "conscious misbehavior or recklessness" by Energizer sufficient to satisfy Rule 9(b), and Plaintiffs' fraudulent inducement accordingly fails. *See TIC Park Centre 9, LLC v. Wojnar*, No. 16-cv-4302, 2017 WL 7733134, at *6 (E.D.N.Y. Apr. 7, 2017).

## II. Counts VI-X: Plaintiffs' Allegations That Energizer Violated Various Laws By Exercising Its Rights Under Established e-Bay Processes Are Implausible.

Counts VI-X of the Complaint allege claims for false/misleading commercial advertisements under 15 U.S.C. §1125(a) (Count VI), unfair competition (Count VII), tortious interference (Count VIII), defamation (Count IX), and trade libel (Count X), all based on the allegation that Energizer submitted two allegedly "false" reports to the eBay Verified Rights Owner Program ("VeRO") concerning a selection of Eminah's eBay product listings for Energizer batteries. Compl. ¶¶ 112-120. VeRO "allows owners of intellectual property (IP) rights and their authorized representatives to report eBay listings

that may infringe on those rights."[1] Through VeRO, eBay permits rights-holders to report product listings for concerns regarding infringement, counterfeiting, brand/logo misuse, warranty misrepresentations, violations of parallel import laws, and other potential IP violations.[2] As an initial matter, it is beyond implausible for Eminah to contend that Energizer's exercise of its rights as the owner of the Energizer trademark to submit a report to VeRO to protect against the misuse of its mark amounts to a violation of five separate laws. But beyond that, the Complaint does not plead the required elements of the claims asserted.

With respect to Plaintiffs' Lanham Act claim (15 U.S.C. § 1125(a)), Eminah alleges that Energizer's two alleged reports to eBay "are likely to deceive and confuse the public . . . into believing that Plaintiffs' products infringe Defendants' intellectual property rights, thereby materially [a]ffecting their decision and ability to purchase Plaintiffs' products." Compl. ¶ 178. This conclusory allegation falls flat, however, because Eminah does not allege that the reports were sent to anyone but eBay (and they weren't) and eBay VeRO reports **are not published to consumers.** See *Nationwide CATV Auditing Servs.,Inc. v. Cablevision Sys. Corp., CSC*, No. 12-cv-3648, 2013 WL 1911434, at *13 (E.D.N.Y. May 7, 2013) (to qualify as "commercial advertising or promotion," the challenged statement must be "disseminated sufficiently to the relevant purchasing public"). The Second Circuit has held that "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." *Id.* (internal citations and quotation marks omitted). These requirements are not pled in the Complaint.

Eminah's state law tort claims are each equally deficient for, among other things, lack of plausible allegations rising to the level of severity and scienter that is required to sustain them. A defamation claim, for example, will only lie where the defendant exposes the plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or…induce an evil opinion of [the plaintiff] in the minds of right-thinking persons[.]" *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014) (citations and internal quotation marks omitted). Tortious interference requires that the defendant acted "for the sole purpose of inflicting intentional harm on [plaintiff]." *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 403 (S.D.N.Y. 2012). Unfair competition is not merely "commercial unfairness," but the "misappropriation of another's commercial advantage." *Nationwide,* 2013 WL 1911434, at *10. And trade libel requires "malice." *Computech,* 2002 WL 31398933, at *5. Here, the Complaint is devoid of any facts giving rise to these levels of "evil" or "malice." To the contrary, the Complaint alleges nothing more than that Energizer submitted two verified reports to eBay regarding a small selection of Eminah's listings for potential IP violations (for context, Eminah currently lists more than 1200 Energizer products for sale on ebay.com).[3] Invoking its right to report to eBay a small selection of over a thousand product listings does not plausibly support a claim that Energizer did so with the requisite bad faith or malice that is a key element of these claims.

For these reasons, Energizer respectfully requests a pre-motion conference in anticipation of its Partial Motion to Dismiss.[4]

---

[1] *See* eBay Verified Rights Owner Program, available at: https://pages.ebay.com/seller-center/listing-and-marketing/verified-rights-owner-program.html (last accessed Mar. 16, 2020).

[2] *See id.* (VeRO FAQs).

[3] As of March 16, 2020, Eminah was listing 895 Energizer products through its 1111deals eBay store, and 374 products through its dealsandbatteries eBay store.

[4] While space constraints have limited the focus of this letter to the noted deficiencies, Energizer's motion to dismiss will more fully set out why each of Eminah's claims fail as a matter of law.

Respectfully submitted,

K&L GATES LLP

*/s/ Christopher S. Finnerty*
Christopher S. Finnerty (*pro hac vice*)

CC:  All counsel of record via ECF.